USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 07 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TODD MILLER, et al.,

Plaintiffs,

-v-

CBS RETIREMENT PLAN,

Defendant.

12 Civ. 3697 (KBF)

MEMORANDUM DECISION & ORDER

KATHERINE B. FORREST, District Judge:

The children of the late Marlin J. Miller ("Miller") commenced this Employee Retirement Income Security Act ("ERISA") action in May 2012; the action was transferred to the undersigned in December of that year. (Compl., ECF No. 1; Notice of Case Reassignment, ECF No. 29.) These plaintiffs allege that their father intended to ensure that they would receive his retirement benefits after his death, but that defendant CBS Retirement Plan thwarted their father's intentions.

The parties agree that plaintiffs' father was in fact entitled to the retirement benefits here at issue several years before he began completing his election paperwork, but by the time he commenced that process (December 2009), he was only weeks away from his death (January 23, 2010). However, defendant argues that because plaintiffs' father died prior to February 1, 2010, the date upon which he would have commenced receiving benefits, the terms of the benefit plan provide that his wife will receive an annuity for her life, and his sons nothing.

Defendant filed a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings on August 31, 2012. (ECF No. 14.) For the reasons set forth below, defendant's motion is GRANTED.

I. FACTUAL BACKGROUND

As discussed below, in the context of a motion pursuant to Rule 12(c), the Court takes as true the plausible factual allegations of the complaint. Here, the Court recites plaintiffs' assertions as drawn from their Complaint as well as the Plan and related documents incorporated by reference.

Plaintiffs Todd M. Miller, Jay M. Miller, and Chad H. Miller, are the only children of the late Marlin J. Miller. Miller was a longtime employee of Viacom[1] and a participant in defendant's CBS Retirement Plan ("the Plan"). (Compl. ¶¶ 5, 11, 16.)

CBS sponsors the Plan (id. ¶ 9), and the CBS Retirement Committee (the "Committee") serves as Plan Administrator. (Id.) The Plan is a defined benefit plan governed by ERISA and qualified pursuant to Section 401(a) of the Internal Revenue Code. (Id. ¶ 8.) As a result of various business combinations over the years, the Plan includes participants who formerly worked for other companies and who were covered by other pension plans. (Id. ¶ 11). For instance, the Plan was at one time known as the Viacom Pension Plan, and prior to that, as the Paramount Communications, Inc. Retirement Plan. (Id.) Information regarding the Plan is primarily provided to participants and beneficiaries through the CBS & YOU Benefits Center ("Benefits Center"). (Id. ¶ 9.)

[1] The former parent company of CBS Broadcasting, Inc.

Miller was an employee of Viacom. (Id. ¶ 12.) He ceased working for Viacom in 1995. (Id.) He qualified for retirement in May 2004. (Id. ¶ 17.) It is undisputed that on November 6, 2009, Plan representatives sent Miller a letter to advise him of his eligibility for benefits. (Id. ¶ 18.) Enclosed with this letter was a Participant Information Form to facilitate Miller's preparation of his retirement application. (Id.) Miller signed the Participant Information Form and returned it on or about November 16, 2009. (Id. ¶ 19.)

As of the late fall of 2009, Miller's health was rapidly failing. (Id. ¶ 20.) On December 7, 2009, several weeks after receiving the letter and the enclosed form, Miller and his son, Todd (who had power of attorney), placed telephone calls to the Benefits Center to initiate the process of selecting beneficiaries. (Id. ¶¶ 21, 25.) Plaintiff Todd Miller indicated that his father was ready to collect his benefits. (Id. ¶ 22.)

Upon inquiry as to his desired benefit commencement date, Miller informed the representative that he wanted benefits to commence "just as soon as possible" and, in response, the representative offered to "we can put the January [2010] date down." (Id. ¶ 23.) During this call, plaintiff Todd Miller asked the representative what the ramifications would be if Miller died prior to benefits commencing. (Id. ¶24.) Following this inquiry, the call disconnected. (Id.)

After the first call disconnected plaintiff and his father called back, reaching a different representative. (Id. ¶ 25.) In the second call, the representative advised Miller—then unmarried—that were he to die prior to the commencement of Plan

benefits, only a spouse would be eligible to receive a survivor benefit, in the form of a Qualified Joint Survivor Annuity ("QJSA"). (Id. ¶ 27.) Any non-spousal beneficiary would only receive a benefit if Miller were to die after the Plan commenced payment. (Id.) During that call, Miller and his son were told that the cut-off for the January payment had passed and that the earliest benefit commencement date would be February 1, 2010. (Id. ¶ 28.)

The day after these two telephone calls with the Millers, the Benefits Center issued a Benefit Notice and Election Package (the "December 10 Package.") (Id. ¶30.) The package included various forms which had to be completed prior to the commencement of Miller's benefits. (Id.) There is no allegation that the Benefits Center was told that Miller intended to marry; thus, the forms that were sent out did not include certain information as to the benefits a spouse would receive that he or she could then knowingly consent to waive.

Plaintiffs allege that in order to ensure that his sons would receive benefits (and in light of his health condition), on December 11, 2009, Miller married his girlfriend, Candyce Belanger. (Id. ¶ 29.)

After receiving the December 10 Package, Miller filled out the forms. (Id. ¶31.) He selected the "10-Year Certain and Life Annuity". (Id.) He designated his sons as beneficiaries (each with a 33 1/3 percent share). (Id. ¶ 32.) In addition, his now wife, Belanger, executed a verified spousal consent in which she waived her right to have Miller's benefit paid in the form of a QJSA and acknowledged that she might receive nothing under the Plan after her husband died. (Id. ¶ 33.)

Finally, Miller signed a waiver of the statutory 30-day notice of plan election period in which he acknowledged:

> My benefit payments will begin as soon as administratively practicable after this completed . . . Form is received by the Plan—but **no earlier than** (1) the first day of the month after the Completed . . . Form is received by the Plan, or (2) seven days after I receive these materials, **whichever is later**."

(Id. ¶ 34 (emphasis added).) The participant information included with the December 10 Package showed no information intended for a spouse and the pension calculations were for an unmarried participant. (Declaration of Michael Arsenault ("Arsenault Decl."), dated August 29, 2012, Ex. 3 at 7.) The December 10 Package also states that the commencement of benefits would be February 1, 2010. (Id. at 1.)

On December 18, 2009, plaintiff Todd Miller again called the Benefits Center. (Compl. ¶ 35.) He informed the Benefits Center that his father had now married and that his spouse had executed the spousal consent form, and that he had made his three sons his beneficiaries. (Id.) Plaintiffs allege that based on whatever occurred during this conversation with the Benefits Center, they were satisfied that the paperwork was in order and they sent it to the Benefits Center. (Id. ¶ 36.) Plaintiffs allege that the completed forms were received by the Plan's Benefits Center on December 21, 2009. (Id.) According to plaintiffs, they believed that the fact that the paperwork had been received by December 21 meant that payments of benefits would commence on January 1, 2010. (Id. ¶ 37.)

Instead, Miller was notified shortly thereafter that his forms were not in proper form. Since Miller had initially told the Benefits Center that he was

unmarried, the December 10 Packet did not include a calculation of the "relative value" that the spouse would be relinquishing should she execute a consent (and waive her rights to QJSA spousal payments). (Id. ¶ 38.)

The Benefits Center sent Miller a new package with the spousal benefit calculation included. (See Arsenault Decl. Ex. 5.) He received that package on December 28, 2009 (the "December 28 Package"), and executed the paperwork again. (Id. ¶ 40.) The December 28 Package indicated that the commencement date for benefits was February 1, 2010. (See Arsenault Decl. Ex. 5 at 1.) The December 28 Package also showed that Miller's spouse would be entitled to a QJSA upon Miller's death. (See Arsenault Decl. Ex. 5 at 3.)

The Benefits Center received the December 28 Package paperwork on January 7, 2010. (Compl. ¶ 41.) The Benefits Center determined that beneficiary elections could not be made in fractions of one percent and sent Miller a letter explaining its position on January 15, 2010. (Id. ¶ 42.)

On January 23, 2010, prior to the commencement of his benefits, Miller died. The Benefits Center determined that, as Miller died prior to the disbursement of benefits and the spousal waiver was invalid as a matter of law, the beneficiary designations of the 10 Year Certain and Life Annuity were void and Belanger was entitled to receive a QJSA spousal survivorship benefit instead. (Id. ¶¶ 43, 46.) Thereafter, The Plan commenced monthly payments of $710.94 to Belanger; unless plaintiffs prevail in this action, those payments will continue for her life. (Id. ¶ 48; see Arsenault Decl. Ex. 7 at 28.)

Plaintiffs filed a claim for benefits in October 2010. (See Arsenault Decl. Ex. 7.) The Retirement Committee denied their claim on January 12, 2011. (See id. Ex. 8.) Citing § 8.1 of the Plan, the Committee stated that because Miller's benefit commencement date was February 1, 2010, and he died prior to starting to receive benefits, the 10-Year Certain Option was not payable. (See id. Ex. 8 at 2-3.) In such a circumstance, the Plan provides that the only benefit payable is a QJSA. (Id.) In addition, in its denial letter, the Committee stated that the December 18 spousal waiver was invalid under federal law because the December 10 Package did not contain a calculation of spousal benefits. (Id.)

Plaintiffs timely appealed the Committee's denial of their claim. In their appeal, plaintiffs argued that Belanger had waived her spousal rights in the December 10 Package. (Compl. ¶ 48.) On May 13, 2011, the Committee denied plaintiffs' appeal. (Id. ¶ 49.) Plaintiffs brought the instant action challenging this determination on May 9, 2012. (ECF No. 1.)

II. STANDARD OF REVIEW ON RULE 12(c) MOTION

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews Rule 12(c) motions for judgment on the pleadings under the same standard as Rule 12(b)(6) motions to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir.2010). Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.'" Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir.2010)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In addition, the Court need not convert a Rule 12(c) motion to a summary judgment motion where it refers to certain material outside the pleadings. Instead, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule [12(c)] motion into one under Rule 56 [for summary judgment] is largely dissipated." Cortec Indus. V. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). The Court may consider any documents incorporated by reference into the complaint or which the plaintiff relied upon in drafting the complaint. See Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000). This includes ERISA plan documents. See, e.g., Steger v. Delta Airlines, Inc., 382 F.Supp.2d 382, 385 (E.D.N.Y. 2005)(considering the Plan in an employee benefits case).

III.THE PLAN AND PROVISIONS OF ERISA

Here, the Plan gives the administrator or a designated fiduciary, the Retirement Committee, discretionary authority to determine eligibility for benefits. (See Arsenault Decl. Ex. 1, Plan § 10.5.) When such discretionary authority has been conferred, the law requires that this Court defer to the administrator's ultimate conclusion unless it is arbitrary and capricious. See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995); Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999). A court should not disturb an administrator's decision unless it was unreasonable or without evidentiary support.

Pagan, 52 F.3d at 442. Decisions may be upheld so long as they are on the continuum of reasonableness. See Davis v. Commercial Bank of New York, 275 F.Supp.2d 418, 425 (S.D.N.Y. 2003).

The Plan here is clear that the administrator's discretionary authority extends to the determination of all benefits and "to resolve all questions arising from the administration, interpretation, and application of the Plan provisions, either by general rules or particular decisions." (Arsenault Decl. Ex. 1, Plan § 10.5(b).)

The Plan provides that for an unmarried participant who elects a Period Certain and Life Income Option ("Period Certain"), he or she can select one or more beneficiaries to continue to receive payments for the remainder for the selected Period Certain should the participant die. (Id. §§ 13, 15.) For a married participant, selecting the Period Certain option and selecting a someone other than the spouse as the beneficiary requires that the spouse execute a waiver. (Id. § 7.2.) In the absence of a validly executed waiver, the Plan provides that the spouse shall be considered the beneficiary upon the participant's death. (Id.) The Internal Revenue Code ("IRC") requires that a spouse receive certain information prior to executing a waiver. In particular, IRC § 417(a)(3) requires that a plan provide a spouse with a written explanation as to what is being waived. Such explanation must include, inter alia, the terms and conditions of the QJSA. Id. The IRS refers to this as the "417(a)(3) explanation." Treas. Reg. § 1.417(a)(3)-1(a). The corresponding regulations provide that the written explanation contain a "relative

value" of the optional form of benefit compared to the QJSA. Treas. Reg. §1.417(a)(3)-1(c)(1)(iv). The relative value must give the participant and the spouse a "numerical comparison" of the relative values between the optional benefit (here, the Period Certain option) and the value of the QJSA. Treas. Reg. §1-417(a)(3)-1(c)(2)(i).

The Plan also provides that in order for a designated beneficiary to receive benefits under the Period Certain option, the participant must have started to receive payments prior to his or her death. (Id. § 8.1.) Thus, pursuant to the Plan, if a participant dies before having started to receive payments, the designated beneficiaries are not entitled to the benefit. (Id.) In such a situation, the Plan provides that only person who would be entitled to receive benefits would be the spouse. (Id.)

Consistent with both ERISA (§205(a)) and the Internal Revenue Code § 417(a)(3), Sections 8.1 and 8.2 of Article VIII of the Plan provide that if the participant dies prior to any payments having commenced, a surviving spouse is entitled to receive a QJSA equal to half of what the Participant would have received under the Plan. (Arsenault Decl. Ex. 1 at 44, Plan Art. VIII, §§ 8.1, 8.2.)

## IV. DISCUSSION

Plaintiffs' claim is premised on the December 18 spousal waiver being valid. If it were valid, so the argument goes, the correct paperwork was received on December 21, and Miller should have commenced receiving payments prior to his death.

Plaintiffs' arguments ignore several crucial and, indeed, dispositive points. First, as set forth above, federal law requires that a spousal waiver contain an express waiver of 50% of the QJSA benefit. See Internal Revenue Code §417(a)(2). In the absence of such an express waiver, had the Plan nonetheless proceeded to pay Miller and then his sons, his spouse might well have a valid claim against the Plan. Id. The Committee has the discretionary authority to make determinations as to Plan benefits and interpretation; determining that the spousal consent form was improperly executed is squarely within the bounds of that discretion. It is perfectly reasonable, and certainly not arbitrary and capricious for this legal provision to be interpreted as requiring inclusion of a calculation of the relative value of the relinquished benefit.

Second, the record is also clear and undisputed that the December 10 Package did not contain the required "numerical comparison" of relative values between the Period Certain option and the QJSA. This is a violation of federal law. The Committee's decision to deem the spousal waiver invalid since it was non-compliant with federal law has evidentiary support and cannot be arbitrary nor capricious.

Third, it is well within the discretion of the Plan and the Committee interpreting the Plan to provide that if a participant dies prior to receiving benefits then the Period Certain option is not available. The Plan so provides and that is what happened here. Again, the determination of benefits was based upon existing provisions of the Plan and as such cannot be said to be arbitrary and capricious.

Fourth, plaintiffs' arguments are premised upon a view of the facts in which defendant was simply trying to "run out the clock" on Miller–and intentionally impede his ability to start receiving benefits on January 1, 2010, prior to his death. This argument ignores that both the December 10 Package and the December 28 Package clearly stated that Miller's benefits would commence on February 1, 2010.[2] (Arsenault Decl. Exs. 3-6 (consisting of package documents).)

CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings is GRANTED. The Clerk of Court is hereby directed to close the motion at ECF No. 14, to terminate any remaining dates, and to close this case.

SO ORDERED.

Dated: New York, New York
March 7, 2013

K. B. Forrest

KATHERINE B. FORREST
United States District Judge

[2] The Court has considered and rejected plaintiffs arguments that estoppel dictates a decision in their favor. As the evidentiary record demonstrates, it was apparent on the face of the December 10 Package that benefits would commence on February 1; so too with the December 28 Package. Thus, even if there was a promise (and even construed most favorably for plaintiffs does not support the Benefit Center's representative as having made a promise), there certainly was no justifiable reliance. In addition, the information needed for a legally valid spousal waiver was concededly not included; this also precludes any estoppel claim.